Good morning, your honors. It may please the court. My name is Luis Cortez here on behalf of the petitioner. I'll endeavor to reserve two minutes for rebuttal and I'll watch the clock. Your honors, I would like, with the court's indulgence, I would like to focus the bulk of my presentation on two issues with the court today. The first one being the issue of nexus and whether the petitioner's past harm was on account of his political opinion. And the second is the agency's determination that the petitioner did not suffer past torture and therefore, as part of that analysis, will not suffer future torture if he is returned to his home country. Your honors, here, the law requires for an asylum applicant to establish whether past or prospective persecution would be on account of a protected ground. And here, the petitioner asserted that he was previously persecuted on account of his political opinion. The immigration judge disagreed and the BIA agreed with the immigration judge's determination that the petitioner could not be prosecuted. Can I interrupt you for a moment? And I apologize. I know it's difficult sometimes with the logistics when we're not in the same location. So, as I understand your briefing on this issue, you agree that the persecutor's motives must be examined and considered as part of the nexus evaluation. Is that correct? That is correct, your honor. So, what evidence is there in the record of the motive of the individual or individuals who shot at the petitioner? Well, here, your honor, we would first rest our answer in the case of Deloso, where we look at the circumstantial evidence that includes the timing of the persecution. And so here, your honor, I think the constellation of facts that we have that show that the persecution or when he was shot was on account of his political opinion was that he was previously threatened because of his political activities. The political party that he belongs to and the threats that he was receiving have a historical animosity and a violent animosity and a violent history against each other that stems back from the Salvadoran Civil War. And that right after an election that he participated in and his party won, it was at a political party meeting where they were trying to establish, I think that the petitioner testified as like the directors for the mayor who had won on this political party. So, excuse me again, the timing is a little unclear to me. I thought I detected some inconsistency in your briefing on the timing. In one instance, the brief says that this meeting occurred before an election and at another place it says it occurred after. And I know there was an election in 2011 and the shooting was in 2015 and these elections are every three years. So, it seemed to me there was some ambiguity in the timeline, which as I understand is important to your argument for nexus. So, when did this happen? It happened at the shooting from my understanding from what the petitioner testified. It happened after the election had taken place and after his political party had won a mayoral race. And so, from what the petitioner testified is that they had this political meeting and I believe it took place inside of a school. But they had this political meeting in order to establish or at least to try to identify, I think he called them directors, the individuals who would work with the mayor. And so, it was during that political meeting that an individual came in and then there was a shooting that occurred where the petitioner was shot. And so, I think given those constellation of facts that he was previously already threatened for his political activities and that these two political parties have a violent history, I think really lend itself to the circumstantial evidence that show the motive. And I think, your honor, one of the biggest, I think the glaring error here is that none of these things were actually considered by the IJ. I think that this would be a different circumstance if the immigration judge grappled with this and said ultimately, well, you know, the timing of it. Wait a minute, didn't the immigration judge address the petitioner's testimony when he went to the hospital that he did not know the identity of the shooter and that the shooter didn't make any statements so that the immigration judge then concluded that it would be speculative to determine the shooter's motives which would Your honor, the immigration judge rested his decision on the nexus for political opinion solely on the fact that they couldn't identify the shooter. Okay, so your argument is that the immigration judge failed by not talking about your timeline, the timeline. That's right, your honor. And we know that because in his decision, he really kind of, the decision for the political opinion nexus is, says, you know, with respect to the political opinion, he has not demonstrated that he was shot because of political beliefs because he has no idea who shot him. And then it just ends there. It does seem to me that they talk about the fact that there had just been the ARENA success in the election, that he's from the ARENA party, that he had done political activities with ARENA. So all of that was acknowledged by the immigration judge it seems to me. So I guess if I understand your argument, the fault is not connecting the dots time-wise? Your honor, I agree with you that the immigration judge in the decision mentioned some of the timeline, but when it came down to actually evaluating the nexus in the political opinion, it mentioned and it start and it ended only with the fact that he couldn't identify the shooter. Nothing else seemed to matter in the nexus analysis when we look at that portion of the immigration judge's decision, because it starts with respect to the political opinion claim, and it ends with he couldn't identify the shooter, so he can't establish a nexus. And I think that really goes contrary to some of this circuit's case law, like the LOSO, like NAVAS that we identify in our briefs that talks about the factual and circumstantial evidence that needs to be considered, and the timing of all of the harm that happened. And so none of that was actually considered in the analysis of the political opinion nexus decision. So I think that the proper course here would be to, now that this error is identified, to send it back to the IJ so that they can consider this in the analysis, because it was dispositive to the IJ that the identity issue was dispositive to the nexus issue for the IJ. Does it matter that he was not personally targeted? Excuse me, Your Honor? Does it matter that he was not personally targeted? It does not, Your Honor, because in cases like Singha, which we also put in our brief, I think it's on page 15, it talks about that if other individuals were persecuted on account of the political opinion. So suppose that there's a situation where this person, the shooter, was going to harm everybody else in there. The Singha case talks about that. That doesn't make on account of any less plausible. And that was within the context of race. If other individuals are being persecuted on account of their race, and the race is in the same line of the petitioner, then it could still attribute to the nexus analysis. And I think that applies by analogy here. I see that I'm running out of time, and I would like to make one more point regarding the IJ. Here, Your Honor, the IJ did not make a finding that he did not suffer past torture. And so that was a finding that was first made by the BIA saying there was no past torture. And here, the evidence compels the conclusion that the petitioner was tortured when he was shot, unless we would posit to the court that being shot does ride to the level of torture. And so under the regulations, Your Honor, past torture and a finding of past torture is evocative or at least indicative as part of the analysis as to whether there would be future torture. Now, of course, it does not give a presumption like it would like in the asylum withholding context. But the regulations does require an acknowledgement of past torture in the evaluation of future torture. The IJ did not make a finding of whether there was past torture or not. That was made by the BIA in the first instance. And so we think that there's two errors there, right? The BIA making the finding at the first instance, and then the fact that the IJ didn't make that finding at all is also, I think, an error here. And so we think that the proper course here is to remand. And I would like to save the remaining time for rebuttal. I think that Judge Miller has a question. Yeah. So just going back to the nexus issue for a moment, you've urged us to review that de novo. And I mean, suppose that I think that our cases aren't totally consistent on that question. As a matter of first principles, isn't the issue on nexus essentially a question of something happened? What is the reason that it happened? Why isn't that a factual issue that we ought to address? I appreciate your question, Your Honor. Here, I think the way that this case is situated is that there's no factual dispute as to what happened. And so I think that the first error here was a legal error that the legal principles of Deloso and Navas were not followed by the IJ to look at this thing cumulatively and instead just look at the identity of the individual as a dispositive factor. So we think that's a legal issue. But even if the court disagrees, and it looks at it as to whether the motivation is a factual inquiry, that we think here, and as we kind of outline in our reply brief, it compels the conclusion that the motivation behind the attack was politically motivated, particularly given the circumstantial evidence on the case. Did that answer your question, Judge Miller? Thank you. Thank you. We will give you some time for rebuttal. Thank you, Your Honor. You may proceed. May it please the Court, Nell Seymour, on behalf of the Attorney General. Your Honors, the government would like to start by addressing what I believe we are getting at, which is that this case is all about nexus. And specifically about the standard of review, it's the government's position that this is a factual question, and that the main question the court should be focused on is the motivation of the alleged persecutors of petitioners. And here, there's no evidence in the record that petitioner was shot on account of his political opinion. And the government would stress that although the agency did consider whether petitioner knew the identity of the shooter, that was not the only thing that they relied on. They considered the record as a whole and concluded that there was no evidence that petitioner's political opinion was the reason for the harm that he suffered. The government would also— One of the things that's missing from the IJ and the BIA is really any linking of the timing. And we do know that circumstantial evidence is admissible in these kind of cases. So you have his work for ARENA, you have the election, the mayor gets elected, and they are now at a political party meeting. Isn't that important in terms of determining the nexus? And none of that really was ever linked in terms of timing by the BIA or the IJ. Why isn't that an error? Your Honor, the government believes that the agency did, in broader context, consider that. And while it may not have been as explicitly linked as would have been preferable, there is a clear consideration of that. And the direct and circumstantial evidence isn't— Show me in the record where that statement is supported. That they considered the timing of the shooting, Your Honor? I do apologize. I don't have the record citation. I'm happy to follow up with briefing on that point. But I think that the broader point that the government would wish to make is that the shooting occurred months after he had been threatened through a friend based on a rumor that he was potentially in trouble with the opposing political party. And he does testify, I believe, that he was told by friends based on a rumor that he may be harmed by the opposing party in his testimony. And that's on 131 and 132 of the record. And that it was shot months later. And that the blockades that he encountered while he was driving arena supporters also occurred after the election. So the timing is borne out by the record, whether or not the agency explicitly addressed it when it made a conclusion. But I do, the government does believe, Your Honor, that that it is assumed that the agency had considered the record as a whole. And here the record reflects that the timing, everything happened after the election had been completed. I want to circle back to something that Judge Miller alluded to, and that's the standard of review. The Petitioner's Council says that it's de novo because there's no factual disputes to be considered. The agency takes a position, which is the more standard position, that these relate to issues of fact and therefore it's just the substantial evidence standard and not de novo. I'd be interested in the government's position on this and whether, in your view, there are disputed facts that go to the nexus. The government's position would be that this is a factual question that should be reviewed for substantial evidence. And that can find support in both Elias Zacharias and more recently in a case Perez Madras from 2020, both of which conclude that nexus is a factual question. And the government's position would not be that there are facts that are in dispute here when it concerns nexus. Contrary to Petitioner's assertions, the agency did consider the overall political context here. But at bottom... I'm not sure, could I just interrupt you briefly? I'm not sure if I heard you. So the agency thinks there are no facts in dispute or that there are? I didn't quite understand your statement on that. The government's position is that there aren't facts, there are not facts in dispute here that the agency properly considered the record, but at bottom focused correctly on motivation and found insufficient record evidence that Petitioner was targeted on account of his political opinion. And the government... If there are no factual disputes, would you agree in that case that we review de novo under Ninth Circuit precedent where there are no factual disputes? Your Honor, the government's position would be that because nexus itself is a factual question that the agency considered for substantial evidence, that is the way the court should review the agency's decisions as well. And the record doesn't compel the reversal. You keep saying the same thing, but I'm sorry. I'm asking you in a very specific context. Generally, I think you're correct. Substantial evidence because nexus is usually a factual issue, but we do have case law that says where there are no disputed facts with respect to nexus, then you look de novo to make a determination. So does the government disagree with that? Because that's why I was trying to clearly understand your view, which I now understand to be that there are no factual disputes vis-a-vis the issue. If I may try again, there is... The government and Petitioner disagree about what motivated the shooter in this case, which I guess would then be a factual dispute, if I'm understanding now, because the government sees that there was not sufficient evidence that the shooter was motivated on account of any protected ground, whereas Petitioner disagrees. However, I don't believe that there are facts in the record otherwise that the agency failed to consider or that we dispute between the parties. Did that provide a more sufficient answer? I appreciate it. Thank you. So the government, at the risk of repeating, at bottom here is motivation. And there just isn't sufficient evidence that either the gangs who threatened Petitioner or the shooter who aimed at random at the building in this case were motivated on account of any protected ground. And that is dispositive here. And the government would also stress that there is a significant distinction between whether or not the shooter in this case would hold his own political opinion that may have influenced his action and whether or not Petitioner himself was targeted on account of his own political opinion, which is the question that is properly before the court. And turning to the family nexus argument, Your Honors, the government would address the fact that Petitioner similarly failed to show that the gangs threatened him on account of his family membership. Instead, they were motivated by a desire to stop the military from interfering in their criminal enterprise. And that Petitioner was simply a way to do that. And Petitioner has not shown that the record has any evidence that the gang was harboring animus or had some reason to target the family itself other than to meet its goal of being able to continue its abject criminality. And turning to protection under cut, Your Honor, the government's position would be that although Petitioner is now focusing on the lack of a past torture conclusion here, there is also insufficient evidence that the government of El Salvador would acquiesce to any such particularized threat of torture to Petitioner. And so in this case, there just isn't sufficient evidence that Petitioner, more likely than not, would be targeted for torture, which is an extreme form of persecution with the consent or acquiescence of the Salvadoran government. And if the court has no more questions, Your Honor, the government would just quickly conclude and say that, again, apologies for having not been clear when the question was initially asked, but the court should review these nexus determinations for substantial evidence. And although Petitioner is asking that the court make inferences in their favor, that is not the way to establish to meet their burden of proof. And here the record just simply does not compel the conclusion that any harm Petitioner suffered or feared would be a on account of a statutorily protected ground. Thank you. Thank you. We'll have a minute, please, for rebuttal. Thank you, Your Honors. And I appreciate the extra minute. Can Your Honors hear me okay? Okay. I think here, looking at the decision in its entirety, I think really supports the fact that the agency looked at, or excuse me, the immigration judge really only looked to the identity and nothing else. Because the immigration judge is, the section where it's arrested at, it's under findings and analysis. So it makes all the factual findings that recounts what happened in the case and that the judge finds the Petitioner credible. And then when it gets down to actually making the legal analysis, although he recognized, the IJ recognized, all of these factual contentions that happened, he rested his entire decision just on the identity. And that he relied just on that principle to make it a dispositive, a dispositive finding. Certainly, if this was any other kind of context, the identity of the individual would not necessarily be the only thing that should be looked at for, to find a motivation behind the attack. I know I'm out of time. So I respectfully request, Your Honor, to, on behalf of Petitioner, to grant the petition for review. Thank you. Thank both counsel for your arguments. The case of Dela Ozelaya is submitted.
judges: McKEOWN, MILLER, BADE